Marvin E. BLUM, individually and on behalf of all other minority shareholders of BankAtlantic, Plaintiff–Appellee,

Elliot Borkson, et al., Intervenors,

v.

BANKATLANTIC FINANCIAL CORP., Alan B. Levan, Jack Abdo, Defendants–Appellants.

No. 89–6270.

United States Court of Appeals, Eleventh Circuit.

March 11, 1991.

Bradford Swing, Eugene E. Stearns, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Fla., for defendants-appellants.

Joel Perwin, Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellants, BankAtlantic Financial Corporation, Alan B. Levan, and Jack Abdo (collectively "BAFCO"), challenge the district court's order denying their motion to require additional notice to class members. Also at issue is the court's jurisdiction over the appeal. Concluding that appellants have not met the requirement for establishing appealability of the district court's collateral order, we hold that we do not have jurisdiction over this appeal.

## I. BACKGROUND

Marvin E. Blum, as representative of a class of plaintiffs, filed this action against BAFCO alleging violations of the Securities Exchange Act of 1934 and breach of contract under state law. On September 13, 1988 the district court certified the class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure,[1] defining the class as "[a]ll persons, other than Defendants, and their affiliates, officers and members of their immediate family who owned shares of BankAtlantic common stock on February 6, 1988, or their successors in interest." The court also established the notice procedure as follows:

> Counsel for the class shall submit to the Court, within twenty (20) days hereof, after conferring with defense counsel, a proposed form of order which provides for the mailing of notice of the pendency of this litigation as a class action. Defendant shall promptly file a list of class members as defined herein, by name and address so that the mailing of the notice can be effectuated.

On November 16, 1988 the court approved the notice to the shareholders submitted by Blum. BAFCO did not object to the notice at that time, and even provided the names and addresses of shareholders to be notified. The parties understood that the shareholder list included some record holders;[2] that is, that the owners of record

1. Rule 23 states, in pertinent part:

**RULE 23. Class Actions**

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) **Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.**

. . . . .

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

2. This fact must have been known by both parties, because the notice included the following statement:

> You have received this notice because your name appears on the records of the transfer agent for BANKATLANTIC as a shareholder of one or more shares of the common stock of BANKATLANTIC on October 17, 1988, *or because it has been forwarded to you as the beneficial owner by a bank, brokerage firm or other institution which held record title to common stock of BANKATLANTIC on October 17, 1988.*

(emphasis supplied).

held the stocks in "street name" for the beneficial owners.[3] The notice also instructed the record owners to forward notices to the beneficial owners.

The notice mailed to the shareholders incorrectly stated that the exclusion form, which if returned would allow the potential class member to opt-out of the litigation, had to be returned by January 15, 1988, rather than 1989. Sometime in December 1988, Blum mailed a correction of this to the same list of shareholders. The mailing of the original notice also failed to include change of address or exclusion forms; this omission required a third mailing in December. The plaintiffs did not receive the approval of either the defendants or the court for these two subsequent addenda, and apparently the addenda did not instruct record owners to forward the documents to the beneficial owners.

On January 13, 1989, BAFCO moved that, inter alia, the exclusion period be extended and that a new notice be sent to clarify the confusion of the prior notices. At a hearing in February 1989, the defendants asserted that the notice addenda had not stated that the record owners should forward the addenda to the beneficial owners, and that a majority of the stock held by potential class members was actually held by these record owners in street name. BAFCO then requested a renotice of the class members, including "proper instructions to Cede and Company [a brokerage firm which owned a majority of shares in street name] as to how to get to those shareholders [the beneficial owners] and a sufficient length of time for those shareholders to opt out." BAFCO questioned whether the beneficial owners had received

notice or the exclusion forms because none of the exclusions filed as of that date had been filed by beneficial owners. BAFCO did not present any other evidence that beneficial owners had not received notice.

At this hearing the plaintiffs asserted that they did not know that Cede and Company was a record owner, and that BAFCO, which had been ordered by the court to provide the list of shareholders, had not informed the plaintiffs that Cede and Company was a record owner. Recognizing that confusion existed regarding the notice, the court extended the exclusion period. It also requested that the parties design a new notice informing class members that if they had not signed an exclusion form, they could now do so. In addition, the court requested that the brokerage houses be informed that they should contact the beneficial owners. Finally, the court ordered that the defendants, BAFCO, inform the plaintiffs of any record owners on the shareholder list.

In March Blum filed a proposed renotice, to which BAFCO objected and proposed revisions in April. Appellants noted in their objection that there might be some difficulty in notifying the beneficial owners. They did not, however, move that these owners be notified directly, but rather suggested that the record owners be told to forward the notice and that the opt-out provision be altered into an opt-in provision which would require class members to request inclusion in the class. The district court found that the notice was sufficient and overruled the objection. The notice included a cover letter which instructed the record owners to forward the notice to the beneficial owners;[4] this for-

---

**3.** This practice of street name ownership consists of registering securities in a name other than that of the beneficial owner. Frequently, as in this case, a bank or brokerage house will function as owner of record on behalf of individual or institutional investors. *See In re Franklin Nat'l Sec. Litig.*, 574 F.2d 662, 664 n. 2 (2d Cir.1978).

**4.** This cover letter read:
This notice to shareholders is to shareholders of "BankAtlantic, a Federal Savings Bank" (Formerly known as Atlantic Federal Savings and Loan Association of Ft. Lauderdale). If

you are a stock clearing house, brokerage firm, or are holding stock for someone else, you should immediately forward the enclosed notice to the beneficial owner of the stock. You may already have received a previous notice to shareholders. Due to the problems relating to mailing of the prior notice to shareholders, the court has required that an additional notice to shareholders be mailed. If you received the prior notice to shareholders, and elected not to participate in this lawsuit by returning the exclusion form, you need not do anything more.

warding instruction was not challenged by the defendants.[5]

During the ensuing months statements were received from three brokerage houses. Two houses sent bills to the plaintiffs for reimbursement of their costs incurred from the mailing of notices. The third company, Thomson McKinnon Securities, Inc., sent a letter to the court listing the clients it determined to be eligible for the class; essentially, this was a list of the beneficial owners for whom Thompson McKinnon held BankAtlantic stock. The court, on August 29, ordered Blum to send a notice to these listed owners, which Blum did.

On November 8, 1989, BAFCO filed the motion presently under review, requesting, inter alia, that notice be mailed to every individual beneficial owner. BAFCO asserted that the Thomson McKinnon letter was evidence that the record owners were not sending notices to the beneficial owners. They provided no other evidence that beneficial owners were not notified.[6] The district court denied this motion without opinion.

## II. APPELLATE JURISDICTION

This court has "jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291. Thus, a court of appeals usually does not have jurisdiction over interlocutory appeals that have not been certified by the district court. *See Flinn v. Gordon,*

775 F.2d 1551, 1552 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986). The Supreme Court has provided an exception to this rule for decisions that, although not terminating the action, do "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

This circuit has elaborated upon the *Cohen* language by identifying three factors necessary to establish such an appealable collateral order: "(1) the substance of collateral orders must be independent and easily separable from the substance of other claims, (2) at least part of the question of collateralness is determined by the need to secure prompt review in order to protect important interests of any party, and (3) the finality issue is to be examined in light of practical, rather than narrowly technical, considerations." *Diaz v. Southern Drilling Co.,* 427 F.2d 1118, 1123 (5th Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970).[7] *See also In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1094–95 (5th Cir.1977).

The central issue on this appeal concerns the second element of the *Cohen* rule: review must be necessary to protect

---

If you have not previously excluded yourself from participation in this lawsuit and wish to do so, then you must return the enclosed exclusion form by no later than July 3, 1989. *(See paragraph 8 for further details.)*

If you are a stock clearinghouse, brokerage firm, or are holding stock for someone else, you should immediately forward the enclosed "notice to shareholders" to the beneficial owner of the stock. Note that this notice to shareholders is to shareholders of "BankAtlantic, a Federal Savings Bank" (Formerly known as Atlantic Federal Savings and Loan Association of Ft. Lauderdale). There is a related entity, "BankAtlantic Financial Corporation," which is a named defendant in this case. This notice is directed to shareholders of "BankAtlantic" and *not* shareholders of "BankAtlantic Financial Corporation."

5. BAFCO did challenge other aspects of the cover letter, including the fact that it was too long. Their proposed alternative cover letter, however, included the same forwarding instruction.

6. Appellants assert, in a footnote in their brief, that evidence from depositions, which were conducted after entry of the order now being appealed, supports this lack of notice. This material is not in the record on appeal; we therefore cannot consider it.

7. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the important interests of a party.[8] Determining what constitutes an important interest in the context of appeals of class notification orders requires careful study. The Supreme Court has found appealable some orders regarding notification methods. In *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 172, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974), the Court upheld jurisdiction under *Cohen* for the appeal of an order imposing 90% of the cost of the notice on the defendants. Although the Court was not applying the *Diaz* analysis, it appears that the possibility that one party would have to pay substantial costs without a guarantee of reimbursement made the issue too important to deny review. *See Bennett v. Behring Corp.*, 629 F.2d 393, 395 (5th Cir. 1980). The Court subsequently has held an order allocating the expense of identification of the class to be appealable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 347 n. 8, 98 S.Ct. 2380, 2387 n. 8, 57 L.Ed.2d 253 (1978). Appellants cite these Supreme Court cases to support the appealability of the district court's order in this case. Although the allocation of costs of identification does constitute an important interest of a party, that is not the specific issue before us. Indeed, Blum has not refused to pay for any part of the notice, and appellants have not asserted that the appellees have not paid the bills they received from two brokerage houses. Rather, appellants here challenge the adequacy of the notification method. Fortunately, our circuit has confronted this issue. In *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1095 (5th Cir.1977) the court held that because the notice "probably omits substantial numbers of the certified class," an appeal should stand. In that case the class was defined as the original retail purchasers of Datsun vehicles from 1966 through 1973. The list used to identify the class members for notification came from a car company's list of current owners of vehicles, a list generated by computer and containing information since 1971. The list had been updated only when the company was informed of a sale of a used car or title registration change. An alternate source of names existed, because the original purchasers were listed on retail cards received from the dealers; compiling addresses from this list, however, would have required far more effort and expense. Nonetheless, the court reasoned that the computer list would omit a great number of people who had purchased the cars during that period but then transferred them to the current owners, and that those original owners, being members of the defined class, would not receive notice. The court stated that the settlement fund established in that case would be so depleted by the time of a final judgment that not enough money would remain for the plaintiffs even to notify the other class members. The court found this possibility to constitute an important interest of a party. In *Bennett v. Behring Corp.*, 629 F.2d 393 (5th Cir. 1980), however, the court held that the allegation that the notice method might not reach all of the class members was not sufficient to meet this prong. There the class consisted of 8,500 property owners in a confined area, and the court found the mere possibility that some owners were temporary residents who might not have received a mailing was insufficient to meet the requirement of protecting important interests.[9] 629 F.2d at 395.

---

8. Because we hold that the order is not appealable under this second prong, we need not address the application of the other elements.

9. The court noted in passing that the costs of giving the class notice was a factor in finding jurisdiction in both *Nissan* and *Eisen*. *See Bennett*, 629 F.2d at 395 n. 4. Appellees here urge that absent an issue regarding the costs of the notice, the notification issue should not be appealable. This argument ignores that the primary harm found in *Nissan* was the potential failure to notify many class members, and that

in *Bennett* the court determined that the possibility of such non-notification was extremely low. Neither *Bennett* nor *Nissan* held that the cost to the plaintiffs of future notification was a necessary element for appealability, but only that it was a factor in determining the harm to a party. As is evident from the fact that we have stressed the notification issue, a cost issue is a sufficient, but not a necessary method of establishing a party's important interest; appealability can, in the proper circumstances, be established independently of any issue regarding the burden of paying for the notices.

Thus the crux of this second prong, as applied to a class action notice challenge, is whether there is a significant likelihood that a substantial portion of the class members would not receive notice. Here appellants assert that 89% of the shares owned by class members are held in "street name" by the record owners. Because notice was sent to brokerage houses and not to the beneficial owners, it is possible, they contend, that these members have not received notice. To support this claim, they observe that one brokerage house, Thomson McKinnon, mailed to the court a list of the beneficial owners rather than forwarding notices itself. Appellants assert that this compels the conclusion that other brokerage houses have not forwarded notices and have not so informed the court. Appellants also refer us to a 1977 SEC study which found that brokerage houses might not forward class notices. *See In re Franklin Nat'l Bank Sec. Litig.,* 574 F.2d 662, 669 (2d Cir.1978).

As to the evidence of the returned list of beneficial owners submitted by Thomson McKinnon, the district court, upon receiving the list, instructed the plaintiffs to mail notices to those owners directly, which the plaintiffs did. There is no evidence that these beneficial owners did not receive notice, nor is there any evidence that other brokerage houses did not forward notices.

Appellants also claim that it is industry practice not to forward notices. Although this was apparently so in 1977 when the SEC conducted its study, appellants present no more recent evidence.[10] BAFCO's reliance on this early study and older cases is particularly troubling in light of their conduct during the drafting of the various notices in this litigation. BAFCO twice approved the method of notification of the record owners with forwarding instructions. They approved the original notice which provided that the beneficial owners receive notice through the intermediaries, and which included forwarding instructions. Then, upon the renotice as required by the district court, BAFCO not only approved notice to the record owners, but actually included that method in their own proposed notice. Thus, in 1989, BAFCO had conceded that notice to the record owners was adequate under Rule 23(c)(2).[11]

Had BAFCO believed that it was industry practice not to forward notices, they should have stated as much when the notices were drafted. They could have proposed alternate methods, such as requiring the record owners to submit lists of beneficial owners to the court or to submit postage receipts or other evidence of mailings.

---

**10.** The 1977 SEC report was cited by the Second Circuit in 1978 to support its holding that notification of the record owners was insufficient under Rule 23(c)(2) of the Federal Rules of Civil Procedure. *See Franklin Nat'l Bank,* 574 F.2d at 669. Appellants also cite *In re Victor Technologies Sec. Litig.,* 792 F.2d 862, 863 (9th Cir.1986) for the proposition that brokerage houses usually will not forward a notice without reimbursement. Unlike the defendants in either of those cases, however, appellants have presented *no* independent and current evidence of this industry practice, nor have they placed in the record any studies of the industry. As we noted in the text, there is no evidence that Blum has not reimbursed record owners. We also observe that in *Victor Technologies* the Ninth Circuit *upheld* a method of notification of the record owners with forwarding instructions. *Id.* That court apparently was confident that the brokerage houses would forward the notices if properly instructed and paid. Because we do not reach the merits of BAFCO's claim, we do not decide whether their references to evidence of industry practice could be adequate to sustain a

Rule 23(c)(2) challenge; we only hold that such evidence is insufficient to meet their burden of demonstrating appealability.

**11.** Indeed, in the February 9 hearing regarding the adequacy of the first notice, BAFCO discussed whether beneficial owners were receiving notices from the record owners via forwarding: "we assume that most of those notices found their way through the system because the instructions were on the face of the notice." Transcript of Hearing at 6. Appellants were here referring to the forwarding instructions on the notice to the record holders, and we take this to mean that BAFCO at that time believed the forwarding method would work. Interestingly, one of their objections to the addenda sent by Blum was the absence of a similar forwarding instruction: "nowhere ... does it indicate that it should be directed through Cede and Co. down to the beneficial owners...." *Id.* at 7. Because the addenda were essential to the first notice, a lack of forwarding instructions required the renotice. BAFCO then approved of the forwarding method on the renotice.

Indeed, appellants now assert that such methods are possible. BAFCO did not propose such options at the time of the notices, however, and they are now estopped, absent concrete evidence of harm, from claiming that the final notice order causes the irreparable harm to the interest of a party sufficient to establish appealability under *Cohen*. Cf. *Bennett*, 629 F.2d at 395 (*Eisen* and *Nissan* represented cases where one party claimed an irreparable harm from the class notice order; such harm was not present in this case).

Appellants argue that estoppel is not an issue because the burden of proving that class members received notice should lie with the class representative. Although that might be so in a case where the defendant initially challenges the notification method, it is not so here, where BAFCO supported the forwarding method. Because BAFCO initially approved of the notice forwarding instructions, it is their burden as appellants to prove that members did not receive notice. The mere suggestion that the Thomson McKinnon letter implies non-cooperation by some record owners, combined with references to evidence of earlier industry practice presented in other courts, is not sufficient for BAFCO to meet their burden of establishing the harm necessary for this court to protect an important interest of a party by interlocutory appeal.

We perceive little difference between this case and *Bennett*, in which the appellants presented the court with the mere possibility that some class members might not have received notice. Indeed, the primary distinction is that here the appellants had already agreed to the notice method, which, as we have stated, weighs against BAFCO. We therefore hold that the second prong of *Cohen* and *Diaz* is not satisfied, leaving us without jurisdiction to hear this case.

APPEAL DISMISSED.